UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| NABORS OFFSHORE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| versus | § | CIVIL ACTION H-06-676 |
| | § | |
| CAPCO OFFSHORE, INC., and | § | |
| CAPCO ENERGY, INC., | § | |
| | § | |
| Defendants. | § | |

# Opinion on Summary Judgment

1.    *Introduction.*

A contractor sued an oil operator for unpaid invoices.  The operator said the contractor took too long to perform the contract and improperly billed for fuel.  The contractor reasonably performed under the contract and properly allocated fuel expenses. The contractor prevails.

2.    *Background.*

In January 2005 Nabors Offshore Corporation and Capco Offshore, Inc., contracted for Nabors to drill an offshore well.  Nabors drilled the well to contract depth on Galveston Block 297 in federal waters.

Nabors sent invoices to Capco for awhile and was paid.  For May and June of 2005, however, the invoices for $891,678.34 sent to Capco were unpaid.

Nabors sued for payment on this account, and Capco counterclaimed.  Capco said that (a) Nabors delayed the drilling of the well, and (b) Nabors did not reimburse it for fuel.  It seeks payment for these as well as attorney's fees.

Nabors moved for summary judgment saying that (a) nothing in the contract or Nabors's performance of it excuses Capco's failure to pay and (b) the records show that the costs of fuel were properly paid.

3.      *Payment.*

The contract called for the drilling of a well.  Capco concedes that Nabors drilled the well and billed for it.  Capco's only reason for nonpayment was that it offset delay and fuel costs.  The contract, however, does not allow for offsets.  Clause 7.1 of the contract says that Capco must pay Nabors the rates listed in the contract regardless of negligence or fault by Nabors or its employees.  The clause also says that payment must be made regardless of the legal theory Capco may advance.

The contract says payment is required when services have been performed and billed; offsets are not allowed.  Because Capco has no reason other than offsets to deny payment, it must pay.  When Capco made its bargain with Nabors, Capco agreed to pay for the work Nabors performed.  Its remedy under the contract was to pay and then sue for a refund after the contract was complete.  Its failure to pay as invoiced breached the contract.

4.      *Delay.*

Capco first says it is due damages, offsetting Nabors's claim, for delay in the drilling of the well.  Nabors was under a duty to complete the well in a reasonably timely manner.

Capco did not bargain for the drilling to be finished by a specific date.  It did not say that how long Nabors took to drill was essential.  The contract says that it lasts as long as it takes to drill one well.  Absent a statement that time is essential, the law implies a reasonable time for performance.  *See Todd Shipyards Corp. v. Jasper Electric Serv. Co.*, 414 F.2d 8, 16 (5th Cir. 1969); *Moore v. Dillworth*, 179 S.W.2d 940, 942 (Tex. 1944).

The course of drilling this well did not run smoothly.  Parts broke.  A Capco representative left a valve open and seawater intruded.  These problems required Nabors to stop drilling to fix them.  Fixing problems as they occur – even if it means suspending operations – is the only rational response Nabors could have taken, and it was fully expected by Capco.

Nabors credited Capco for several of these stoppages – including the longest of more than sixty-three hours.  Capco argues that this somehow means that it does not have to pay the unpaid invoices even after the deduction for the delay.

It argues that conduct should be used to interpret the contract.  The contract is not in any way vague about payment rates.   It sets out the rates Nabors is to be paid when it was actively drilling, or delayed by weather or the need for repairs.  Capco has

not shown – or even pleaded – that the unpaid invoices contain charges for active operation when Nabors was instead repairing equipment. It only says that the drilling took longer than it should have. The fact that Nabors recognized certain periods as non-billable reflects a careful contractor billing for work done.

Nabors has shown that the work was completed with reasonable diligence. Capco's counterclaim has nothing but argument. It was asked to show that Nabors's performance was unreasonable. It produced grossly incomplete data that failed to establish that Nabors took longer than the circumstances required.

5.   *Fuel Expense.*

The contract required Nabors to pay for fuel consumed while the equipment was under tow. At all other times, Capco had to pay for fuel and was to get a credit at the end of the contract for fuel balances.

Capco says that it was only to pay for a flat day rate and that each party was to pay for its own fuel costs. The plain language of the contract contradicts this. It says that Nabors is to pay for fuel while the equipment was under tow. Nabors was also to invoice Capco for the beginning fuel amounts and credit Capco for the amount left at the end. If Capco was not obliged to pay for fuel during operations, there would be no need to credit Capco anything at the end.

Capco points to the provisions that say each party is responsible for oil, greases, lubes, and hydraulic fluids for their own equipment. To interpret these words to include diesel fuel would go against the plain language of the contract. This transparent argument would be silly if it were not added to raise Nabors's cost.

6.   *Conclusion.*

Nabors performed as required by the contract and properly billed for its services. Capco refused to pay alleging certain offsets. The contract does not provide for offsets, and the offsets alleged are not valid. Nabors will recover its invoice amounts, interest, attorneys' fees, and costs.

Signed on August **29**, 2007, at Houston, Texas.

Lynn N. Hughes
United States District Judge